And we'll hear argument next in Grant v. City of New York 23-363. Mr. Maringolo? Yes, Your Honor. Good morning, Your Honors. I'm here on behalf of Mr. Grant as the appellant. What I really want to say, Your Honors, is that the 12B6 motion that was filed, there are so many issues of fact on why this should be remanded back to the district court. Mr. Grant, just common sense tells you, he was a police officer, a highly decorated police officer for 19 years and 11 months. He was close to the 20th year to have the full benefits of retirement and he retired. In addition to that, he forfeited approximately a half a million dollars of work that he incurred, meaning whether it be overtime or vacation pay, and he forfeited that also at 19 years and 11 months. We respectfully submit to the court that it was under duress that he resigned. Right, but that was true in other cases too, including Capul, if I'm pronouncing it right, C-A-P-U-L, and this court basically just affirmed everything Judge Fehler did in that case. So how is this case different from that case? Okay, Your Honor, Judge Sullivan, this case is very different from that. All of the plaintiffs in Capul, Rodriguez, de Blasio, and Capul, they all had over 20 years. They were all made whole with their vacation and their overtime. So they just wanted to try to reinstate their job. This particular case with Mr. Grant is entirely different. He lost a tremendous amount of money, meaning property and everything that he really worked for. But how does any of that change the analysis? The issue is whether or not a resignation under duress constitutes a violation of due process. And how is the other case different from this one on that score? The resignation for duress? Well, both cases involve resignation under duress, right? Both cases do, Your Honor, yes. But why is the fact that those plaintiffs served 20 years and yours was just less than 20 years, why does that mean that the results should be different here? Well, the result should be different here because Judge Fehler at 19CV, and I have this 43-34, when the city tried to join the cases as similar cases, she denied that. And I believe it's docket number 21 on the sheet. And she denied that because it is different, Judge. I mean, this duress for Mr. Grant, he lost a tremendous amount of money where the other guys, they didn't lose anything. Isn't the issue here whether the availability of post-deprivation relief provided by New York law, which your client didn't avail himself of, is an adequate substitute for pre-deprivation relief? Is that the issue? And what are the issues of fact that interfere with the, that lie instead of the place of the conclusion that he could have brought an Article 78 proceeding? He didn't. And that satisfies the requirements of due process. But Your Honor, the Article 78 would have been if the city had taken steps to fire him. There were no, nothing was done by the city. He went in himself, meaning Mr. Grant, and he resigned. You're saying resignation under pressure is like being fired under, under coercion. It's like being fired. If you resign under coercion, it's like being fired. And, and whereas you would have been entitled to pre-deprivation release, if you were being fired, relief, if you were being fired, this because pre-deprivation is not, is not feasible where the person resigns voluntarily, but under coercion. The question is whether the post-deprivation relief provided by Article 78 does the trick. And where are the, where are the issues of fact that you say interfere with the judgment on that, on that issue? Well, the, the issues of fact, Your Honor, is that we would have been right back here if we'd filed the Article 78 and then Mr. Grant was reinstated and subsequently fired, you know, subsequently fired, we would be right back here in front of you that he was, you know, this, this was wrong. He was terminated wrongfully. He was put under duress in order to do this. And, and, and respectfully. Yes, but the Article 78, if the Article 78 concluded, well, we're going to examine to see whether anything was done that was improper. And we conclude there was nothing improper. So you lose. That's essentially the situation that he's in, because I mean, that is one of the possible results of the Article 78. You either win it or you lose it. And if he, and, and, and having, having not, having not even tried it, he's in the same situation as having tried it and lost it. Right. But he should, he should be able to put forth evidence of, of the, well, he was able to, he was able to in an Article 78, but he chose not to avail himself of it. Isn't that the issue in this case? I, I, your honor, I think by him going in and resigning that Article 78 is, it would have been a moot issue at, at that time he went in and he would claim that it was coercion, that it was, that it was coerced resignation equivalent to being fired. Right. But your honor, the 1983 is the remedy that he sought. You know, if he went in and said, but he is, but he is seeking it and alleging a due process violation. So then I believe, consistent with what Judge LaValle said, we look at the pre deprivation relief and the post deprivation relief. And there's an Article 78 proceeding that was available to him. I would, that's the due process issue before us, I believe. That is your honors. But I believe, I believe he's taking, there's the facts at hand would permit him for bringing this 1983 action and allowed to litigate it respectfully. So if you strip out some of the facts that I think you've been pointing to that are in Kapoor, um, was it not the same issue in front of, in Kapoor? The same basic issue, understanding that there are different facts. The same Article 78 issue? Correct. I, I believe that would be the same, uh, analysis, uh, you know, I guess this court has taken, but I think this case is a totally different case than that case. That's why Judge consolidate the cases because he should have been able, entitled to put forth some evidence. Wait, the standard for taking a case as relating is, is different. I mean, it's basically simply whether or not it's efficient for the judge to do it, but it doesn't say whether or not the legal issues are identical. Um, do you see any distinction between the legal issues, uh, in these two cases? I, I, I just think that your honor, and I understand that I'm not trying to be difficult nor am I trying to reinvent the Article 78 law. I apologize. Just answer. I just, I think that the difference is, is, is he was in a different situation than the other, the other plaintiffs. But how does that difference, how does that difference change the fact that the resolution of Kapoor was that an Article 78 was available to them and they didn't take it. And that satisfies their claim that they didn't get due process. How, how is this case different in that regard? I, I can't answer that at this point. I think, I think, I think there are, I just think it's factually different. I don't think, I guess, if we want to specify the legal issues that he had the opportunity to file or could have, but I think he chose at this particular time, he chose to file the 1983, which we believe that it is the appropriate remedy. If he files the Article 78, we're just going around and around and around where he would be terminated, you know, and subsequently lose all the property. He was, he, he's the only one who lost money out of the rest. The others didn't. So Mr. Maringolo, you've reserved three minutes for rebuttal. Yes. We'll hear from the counsel for the appellee, Mr. Matza-Brown. Please proceed. May it please the court. Daniel Matza-Brown, Assistant Corporation Counsel for the Appellees. This case, as each of your honors has insinuated, is identical legally to the mere months ago. My colleague just now talked about supposed factual differences between the two matters and how they were not consolidated in the district court. My understanding of the reason that I believe the Coppola plaintiffs argued against consolidation was because they believe that they were better situated factually than Mr. Grant is here. You know, Mr. Grant was or not. The Coppola plaintiffs in fact had administrative findings that they had indeed resigned under as no such findings, right? So the Coppola plaintiffs did not want their case consolidated with Mr. Grant's factually weaker case. One argument. He, he draws the distinction that there are property issues involved in this case that were not involved in, in that case, pay and pension and stuff like that. Is there anything about Article 78 relief that would, would have been incapable of giving him satisfaction that would just, that could distinguish it from, from CAPPL? Absolutely not, your honor. The CAPPL complaint alleges a deprivation of property, which is what Mr. Grant argues here. And despite what my colleague has said, Article 78 provides a clear mechanism for a public employee to claim that they were coerced into resigning under duress, right? That's the Ortlieb case that we cite in our brief and the Wolf case as well, right? So supposing that, supposing that the Article 78 court should, should develop the opinion, should, should view the case as one in which he was coerced without any proper basis. Let's say the, let's say the Article 78 judge or judges view this case as one in which he was coerced on the basis of trumped up, fabricated evidence with no legal basis. In fact, what could the Article 78 court do for him? I believe your honor that it could, it could reverse his resignation as coerced, right? So there would be a, basically a finding that the, that the acceptance of the resignation and the, and the state action that led to it was improper. So then if that, if they did that and he, your, your adversary was saying it would just go around and around and around because he would then be fired. If he was reinstated after his voluntary resignation, voluntary, but coerced resignation, he would be reinstated. But if the pre, uh, uh, uh, uh, uh, relief in advance of the deprivation, right? Well, and that's, and that's what was available here, right? What, what we've all been ignoring so far and what, what, what my colleagues are arguing about it going around and around and ignores is it ignores the disciplinary process. Well, it doesn't go around. It doesn't go around and around. So, so what, what, what Mr. Grant had, had Mr. Grant wanted to go forward with and not put in his papers at 11, 19 years and 11 months, he could have done that, right? And, and, and there's nothing, as we make clear in our brief, there's nothing that prevents an officer from putting in their retirement after disciplinary charges are served. And these, these processes often take months, if not years, right? And so, so what Mr. Grant did is he made a decision weighing the costs and benefits. And he looked at what the, the Julio court calls, you know, an opportunity to save face. And he said, I'm going to put in my papers now, and I'm not going to go through with the disciplinary charges. He never even asked what the charges would have been. And he now claims that the constitution required a third path, right? Not only the opportunity to go forward with a robust disciplinary hearing or the opportunity to either challenge the results of that hearing, right? Once we're done with that or there may be no discipline imposed in which case we're done, right? Well, the discipline couldn't be imposed without pre deprivation hearing, right? That's right. That's exactly right. Your honor. Right. And so it doesn't go around and around and around. It might take one U-turn he's back in his job. And then if they want to fire him, they need to give him pre deprivation hearing. Exactly. And the hearing that, that is already contemplated under the rules, right? Is, is the one that would have gone forward, right? Had the charges been served. So there are ample procedural avenues here. There's no allegation that any of those are constitutionally inadequate here and following both Giglio and this court's decision in Koppel, there's no claim on the facts of the ledge. This court should affirm. Thank you very much. We'll hear from Mr. You've got three minutes of rebuttal. Thank you very much. I think that the Mr. Grant, when this was happening, he was threatened that by, by Mr. Bratton through his union officer, Mr. Richter, that he would be terminated. There was not going to be a hearing. The, the commissioner of the NYPD can unilaterally terminate anyone that he chooses. So Mr. Grant was told that he would be terminated. Therefore he would have lost, you know, immediately and lost everything. He chose to resign based on that duress. And these are facts that have been pled well in the, in the, in the complaint that is completely different than the Kapool because they, all the, all the plans in Kapool, because they all had their 20 years, you know, if Mr. Grant was terminated immediately, he would lose everything that he worked for. You know, he has a little pension now that, that he chose. And I was his trial counsel at the criminal level. And I recall, you know, being a month before this, that he had to do this. I mean, I went through it with him. Isn't it correct that if you went to the articles, if you had gone to the article 78 procedure and the article 78 made a determination that, um, that things were not done properly in accordance with law and he was coerced improperly into resigning, uh, that he could be reinstated. He would, then he would have, and if he were reinstated, then he would have all the constitutional protections to pre deprivation relief that, uh, anyone else has, but he didn't take that route. But I don't think he did not take that route you're on. And I guess that is the issue here, but I think for the, for the duress that he was put under, we don't see, you know, if we, if we look at, uh, you know, the, the facts surrounded that was pled in the complaint, we believe that this, this, these, this should be reinstated to the district court and discovery should be done with depositions to show that you just can't, you know, use this type of duress in which Mr. Grant, yes, he missed the article 78, uh, during this period of time, but you know, he has a 1983 action that should, you know, you, you shouldn't forfeit a 1983 action because of the article 78. Can I ask you a very quick question? Mr. Byrne has passed away, sadly. Um, so is there any reason why he shouldn't be dismissed from this deal outright? Uh, all the claims dismissed against him? I, I, I was not the, uh, I, I can't answer that judge because I was not, I'm not the civil lawyer on this. Uh, um, just did the appeal for Mr. Grant. We have a good relationship after the, but no party has moved or filed a motion to substitute Mr. Byrne with somebody else, right? No judge. All right. Thank you very much. Your honors have a good day and be safe. Thank you very much. We'll reserve decision.